IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LACEY M. SIVAK, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-96-0056-S-BLW |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| JOHN HARDISON, Warden, | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| Respondent.[1] | ) | |
| _____ | ) | |

Before the Court in this capital habeas matter are Petitioner's Motion for

Discovery, Petitioner's Motion for an Evidentiary Hearing, and Respondent's

Motion to Reconsider Order on Motion to Alter or Amend.  (Docket Nos. 247, 259,

& 267.)  The Court has determined that oral argument is unnecessary, and it will

resolve these matters on the briefing and the record.

For the reasons set forth more fully herein, the Court grants Respondent's

motion to reconsider the procedural default status of Claim 14.  The Court will

grant Petitioner's request for limited discovery on Claims 5 and 6, but denies

Petitioner's request for discovery and an evidentiary hearing on all other claims.

_____

[1]  John Hardison shall be substituted for Joe Klauser as Petitioner's current custodian, per
Federal Rule of Civil Procedure 25(d).

**Memorandum Decision and Order - 1**

## PROCEDURAL BACKGROUND

In 1981, Petitioner was tried, convicted, and sentenced to death for the stabbing and shooting death of Dixie Wilson.  In a separate trial, Petitioner's co-defendant, Randall Bainbridge, was also found guilty of first-degree murder. Bainbridge received a fixed life sentence.

After an initial remand for resentencing, Petitioner's judgment of conviction and sentence was affirmed by the Idaho Supreme Court in 1983.  *State v. Sivak*, 674 P.2d 396 (Idaho 1983) (*Sivak I*).  On appeal from the denial of post-conviction relief, however, the Idaho Supreme Court vacated the death sentence based upon the sentencing court's improper restriction on the presentation of relevant mitigating evidence.  *State v. Sivak*, 731 P.2d 192 (Idaho 1986) (*Sivak II*).  The case was remanded and Petitioner was resentenced to death in 1988, but the Idaho Supreme Court again vacated the death sentence, finding that the sentencing court did not correctly weigh the mitigating circumstances against each aggravating factor.  *State v. Sivak*, 806 P.2d 413 (Idaho 1990) (*Sivak* III).  In 1992, Petitioner was sentenced to death for the final time, and the Idaho Supreme Court affirmed. *State v. Sivak*, 901 P.2d 494 (Idaho 1995) (*Sivak IV*).

In 1996, Petitioner initiated federal habeas proceedings.  This Court granted, in part, Petitioner's initial request for discovery, which resulted in the discovery of

**Memorandum Decision and Order - 2**

four letters in the trial prosecutor's file that revealed the existence of a possible,

previously undisclosed agreement between the State and a jailhouse informant who

testified against Petitioner at trial.  The Court stayed the federal case while

Petitioner returned to state court to exhaust claims related to this discovery.  In

2000, the Idaho Supreme Court denied these claims, and the stay in the federal case

was lifted.  *State v. Sivak*, 8 P.3d 636 (Idaho 2000) (*Sivak V*).

The Court subsequently issued an order dismissing several claims as

procedurally defaulted.  *See Order dated September 4, 2001 ("Procedural Default*

*Order")*.  After another stay of the federal case so that Petitioner could exhaust

claims related to *Ring v. Arizona*, 536 U.S. 584 (2002), the case has resumed.

Petitioner has filed a Motion for an Evidentiary Hearing on Claims 1-6, 9, 12, and

14, and has requested discovery on these claims.  Respondent objects to these

requests.  Respondent has also filed a Motion to Reconsider the procedural default

status of Claim 14.

Because Claim 14 is included in Petitioner's request for discovery and a

hearing, the Court will first address Respondent's Motion to Reconsider.

## MOTION TO RECONSIDER

In Claim 14, Petitioner contends that he was denied the effective assistance

of counsel on appeal because counsel "failed to invoke the applicable provisions of

the federal constitution in each and every claim of error presented to the Idaho Supreme Court." *First Amended Petition*, pp. 29-30. The Court initially determined that this claim was procedurally defaulted because Petitioner had never raised it in state court, but later reconsidered that decision and concluded that the state procedural bar was inadequate to prevent review under the rationale of *Hoffman v. Arave*, 236 F.3d 523 (9th Cir. 2001). *See Order on Motion to Alter or Amend*, pp. 8-9. Respondent has asked the Court to revisit the issue in light of a clarification in the controlling law in *Leavitt v Arave*, 383 F.3d 809, 840 (9th Cir. 2004). Respondent's argument is well taken.

In *Hoffman*, the petitioner was represented by the same attorneys at trial, in the first post-conviction matter, and during the consolidated appeal from those proceedings. *Hoffman*, 236 F.3d at 527-29. Those attorneys did not argue their own ineffectiveness, and Hoffman's attempt to do so later, with new counsel, was barred under Idaho Code § 19-2719 because the claims had not been raised within forty-two days of the entry of judgment. *Id*. at 528. The Ninth Circuit held that the forty-two day deadline and strict waiver provision in Idaho Code § 19-2719 as applied to claims of ineffective assistance of counsel was uniquely harsh under the circumstances of the case and was not adequate to prevent federal review of those claims. *Id*. at 535-36. Though Hoffman had raised a claim of ineffective

**Memorandum Decision and Order - 4**

assistance of *appellate* counsel in addition to his trial counsel claims, which arguably presented a different type of procedural default analysis, the opinion did not distinguish between the claims.

In *Leavitt*, the Ninth Circuit recognized the distinction and clarified that *Hoffman* generally will not save defaulted claims of ineffective assistance of appellate counsel. *Leavitt*, 383 F.3d at 839-40. Those claims obviously cannot be known within forty-two days of judgment because an appeal has not yet occurred. As a consequence, the Idaho Supreme Court has determined that such claims must be raised within a "reasonable time" after they are known or reasonably could have been known. *Id.* at 840 (*citing Paz v. State*, 852 P.2d 1355, 1357 (Idaho 1993) and *Porter v. State*, 32 P.3d 151, 154 (2001)). The *Leavitt* court noted that it had "not been directed to any case that construes 'reasonable time' in an overly restrictive manner," and concluded that the state procedural bar was therefore adequate to preclude federal review. *Id*.

This Court is persuaded that *Leavitt* controls here. Petitioner has never raised a claim of ineffective assistance of appellate counsel in the state courts. If he attempted to so now, the claim would be procedurally barred based upon his failure to raise it within a reasonable time after it was known or reasonably should have been known. The Court is bound by *Leavitt*'s conclusion that this state

**Memorandum Decision and Order - 5**

procedural rule is adequate to bar federal habeas review.

Admittedly, the same counsel represented Petitioner during his direct appeal and for more than ten years thereafter, but Petitioner's contention that the default of this claim should be excused because his counsel could not have been expected to address his own appellate ineffectiveness in a subsequent post-conviction proceeding is similar to arguments that have been consistently rejected.  *See Bonin v. Calderon*, 77 F.3d 1155, 1159-60 (9th Cir. 1996);  *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996); *Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir. 1998).  The petitioner in *Leavitt* was also represented by the same counsel during the direct appeal, at the resentencing hearing, and on appeal from resentencing, but the Ninth Circuit nevertheless found that the allegations of ineffective assistance of counsel during the direct appeal were barred.  *See Leavitt v. Arave*, CV 93-0024-S-BLW; *see also Leavitt*, 383 F.3d at 840 (concluding, however, that the default of a claim of ineffective assistance at the *resentencing* hearing was excused under *Hoffman*).

Based upon the foregoing, the Court reconsiders its decision, and Claim 14 will be dismissed as procedurally defaulted.

**Memorandum Decision and Order - 6**

# DISCOVERY AND AN EVIDENTIARY HEARING

Petitioner has requested discovery and an evidentiary hearing on Claims 1-6, 9, and 12.[2]  The Court will allow Petitioner an opportunity to develop the facts on two claims, Claims 5 and 6, through limited discovery, after which the Court will determine whether a hearing will be necessary on those claims.  Petitioner has not persuaded the Court that good cause exists for discovery on any other claims, or that an evidentiary hearing will be necessary to resolve any other claims.

## A.     STANDARD OF LAW

The parties disagree whether this case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).  Petitioner, through counsel, filed a Non-Finalized Petition for Writ of Habeas Corpus on April 18, 1996, six days before AEDPA became law.  (Docket No. 14.)  The Court concludes that the Non-Finalized Petition, which raised five claims and requested the Court to issue a writ of habeas corpus, constituted an application for habeas relief that was pending when AEDPA was enacted.  *See Woodford v. Garceau*, 538 U.S. 202 (2003).  Therefore, this matter is not governed by AEDPA.  *Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).

---

[2]  Based upon the Court's decision regarding Claim 14, Petitioner's request for additional factual development on that claim is denied as moot.

**Memorandum Decision and Order - 7**

Under pre-AEDPA law, a federal court is required to conduct an evidentiary hearing when (1) the petitioner has alleged facts that, if proved, would entitle him to relief, and (2) the state court has not reliably found the relevant facts after a full and fair hearing. *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992); *Townsend v. Sain*, 372 U.S. 293 (1963). No federal hearing is required when the claim presents only a question of law, or when the matter can be resolved on the basis of the state court record. *Hendricks*, 974 F.2d at 1103. In addition, conclusory allegations that are wholly devoid of specifics do not require a hearing. *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994).

A court may also allow the parties to engage in discovery upon a showing of good cause, and there may be instances in which discovery would be appropriate before the court determines whether a hearing will be necessary. *See Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977) (quoting the Advisory Committee Note to Rule 6 of the Rules Governing Section 2254 Cases); *see also Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997) (noting that discovery may be available to a petitioner regardless whether a hearing will be held). A court may also expand the record with material that is related to the petition. *See* Habeas Rule 7.

A habeas petitioner has generally shown good cause for discovery when there is "reason to believe that the petitioner may, if the facts are fully developed,

**Memorandum Decision and Order - 8**

be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (*citing Harris v. Nelson*, 394 U.S. 286, 295 (1969)).  If good cause is shown, the extent and scope of discovery is within the court's discretion. *See* Habeas Rule 6(a).

### B.   DISCUSSION

(1)   <u>Randall Bainbridge's Statements: Claim 1</u>

In his first claim, Petitioner contends that the state court unconstitutionally relied upon the unsworn hearsay statements of co-defendant Randy Bainbridge in sentencing Petitioner to death.

As an initial matter, the Court is not persuaded by Respondent's argument that the state court did not rely upon the Bainbridge statements.  Those statements were provided to the court as part of the presentence investigation report, and the state court did not exclude them from consideration, despite Petitioner's request. Morever, the Idaho Supreme Court determined in Petitioner's direct appeal that Bainbridge's statements provided evidentiary support for the sentencing court's findings and, in a later appeal, concluded that the sentencing court's "consideration" of the statements did not violate Petitioner's right to due process of law.  *See Sivak I*, 674 P.2d at 402*; see also Sivak IV*, 901 P.2d at 497-98.  The state supreme court's finding of fact that the lower court relied, at least to some degree,

upon the Bainbridge statements is supported by the record and shall be presumed to be correct.  The remaining issues with respect to Claim 1 involve questions of law that can be decided on the record, and discovery and an evidentiary hearing are unnecessary.

(2)    _Brady_ and _Napue_ Claims: Claims 2, 3, and 4

In Claim 2, Petitioner alleges that the prosecution failed to disclose to the defense that it had an agreement with jailhouse informant Jimmy Leytham in exchange for his trial testimony.  Petitioner bases this claim on the discovery of four letters in the prosecutor's files, which show that the prosecution provided benefits to Leytham in the form of recommendations of leniency on other charges and in parole matters.  In Claim 3, Petitioner contends that the prosecutor knowingly presented Leytham's alleged false trial testimony and permitted it to go uncorrected.  Finally, in Claim 4, Petitioner alleges that the prosecution also withheld evidence that Randy Brainbridge told another county jail inmate, Louis Fazio, that he had touched the victim's breasts as she was dying, which Petitioner contends was exculpatory evidence.  Petitioner requests discovery and an evidentiary hearing on all of these matters.

It is a violation of due process of law when the prosecution withholds exculpatory evidence from the defense that is material to guilt or punishment.

**Memorandum Decision and Order - 10**

*Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Bagley*, 473 U.S. 667, 676 (1985).  A *"Brady"* claim contains three essential components: (1) the evidence must be favorable to the accused, either because it is exculpatory or it is impeaching; (2) the prosecution must have withheld the evidence, either intentionally or inadvertently; and (3) the evidence must be material to guilt or punishment.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Evidence is material to guilt or punishment when there is a reasonable probability of a different outcome had the evidence been disclosed.  *Id.* at 289-90.

Similarly, a prosecutor violates a defendant's right to due process if the prosecutor knowingly presents false testimony or allows false testimony to go uncorrected.  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150 (1972).  The constitutional violation amounts to reversible error when there is a reasonable likelihood that the false testimony could have affected the judgment of the jury.  *Giglio*, 405 U.S. at 154.

(a)    The Leytham Evidence

The Court finds that the first two components of Petitioner's *Brady* claim regarding Jimmy Leytham (Claim 2) are established by the record in this case.

It is clear that the recently discovered letters are "favorable" to Petitioner because they could have been used to impeach Leytham's trial testimony.  *See*

*Bagley*, 473 U.S. at 676 (impeachment evidence is *Brady* material).  While Leytham admitted at trial that charges against him had been dismissed and that he had been paroled from another sentence, he claimed that he did not seek any particular benefit in exchange for his testimony and that he was testifying out of a sense of civic duty and a desire to protect his family.  *State's Lodging A-7*, pp. 535. The new evidence undermines these assertions.

Both this Court and the Idaho Supreme Court have also found that the State withheld the letters from the defense.  *Sivak V*, 8 P.3d at 642; *Procedural Default Order*, p. 24.  The Court is not convinced by Respondent's argument that the prosecution was absolved of its duty to disclose because defense counsel had sufficient information to discover the content of the letters before trial.  *See Response to Motion for Evidentiary Hearing*, pp. 22-23.  The United States Supreme Court has noted that due process will not tolerate a game of "prosecution may hide, defendant must seek," particularly when the prosecution has indicated that it has an open file and that it has complied with its *Brady* obligations, as in this case.  *See Banks v. Dretke*, 540 U.S. 668, 696 (2004); *see also Stickler*, 527 U.S. at 286-87.

The only issue remaining to be resolved is whether the withheld evidence is material to guilt or punishment.  This determination requires an analysis of the

**Memorandum Decision and Order - 12**

effect that the evidence would have had at trial and sentencing in light of the evidence that was produced in those proceedings, which is a matter that can be decided on the record. Petitioner's request for discovery and an evidentiary hearing will be denied.

The Court previously found that Petitioner's *Napue* claim with respect to Leytham's testimony (Claim 3) was procedurally defaulted. *Procedural Default Order*, pp. 24-25. The Court determined that Petitioner had shown cause for the default based upon the State's failure to reveal the evidence, but concluded that Petitioner had not shown sufficient prejudice to excuse the default. *Id*. Petitioner requested reconsideration of this decision, which was denied. *Order on Motion to Alter or Amend*, pp. 6-7. Petitioner asks the Court to reconsider its decision again, which it declines to do at this time.[3]

(b)   The Fazio Evidence

Petitioner next contends that the State withheld Randy Bainbridge's

---

[3] Petitioner's reliance upon *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005), to support his argument that the Court applied an incorrect prejudice standard is misplaced. While Petitioner is correct that *Hayes* involved a *Napue* claim, the claim in that case was decided on the merits, and *Hayes* does not address the appropriate level of prejudice that must be shown to excuse a procedurally defaulted *Napue* claim. To the extent that the correct standard may be derived from *Strickler*, this Court has previously rejected Petitioner's request for reconsideration on that basis, *see Order on Motion to Alter or Amend*, p. 7, though the Court retains the discretion to revisit the prejudice issue after considering briefing on the merits of Claim 2.

**Memorandum Decision and Order - 13**

statements to Louis Fazio, in which Bainbridge allegedly told Fazio that he had touched the victim's breasts as she was dying.  Petitioner alleges that this evidence was exculpatory and material, and that he is entitled to discovery and a hearing.

After an evidentiary hearing in state court, the district court found that a transcript of the Fazio interview containing the Bainbridge statement was in the prosecutor's files before trial and was accessible to defense counsel.  *State's Lodging G-57*, p. 175.  Petitioner argues that this factual finding should not be given deference because the discovery of the suppressed Leytham letters occurred long after the evidentiary hearing, which Petitioner contends now casts doubt on the credibility of the prosecutor's testimony that the Fazio transcript was also available to the defense.  There is force to this argument, but even if the Court were to disregard the state court's finding that the prosecution did not suppress this evidence, Petitioner has not alleged facts that, if proved, show he would be entitled to relief on this claim.

Petitioner's only allegation of prejudice in his First Amended Petition is that Bainbridge's alleged comments to Fazio would have contradicted Bainbridge's unsworn statements that were considered at sentencing.  *First Amended Petition*, pp. 17-18.  In other words, Petitioner alleges prejudice only as to his punishment. Petitioner, though, had long been aware of this evidence by the time that he was

**Memorandum Decision and Order - 14**

last sentenced to death.  Indeed, Petitioner's counsel referred to Bainbridge's

statements to Fazio at the 1988 and 1992 sentencing hearings in support of his

argument that Petitioner was not more culpable than Bainbridge and that Petitioner

had not sexually molested the victim.  *State's Lodging G-59*, pp. 198-200, *State's*

*Lodging I-72*, p. 169.  Petitioner has not explained how he would be able to prove a

*Brady* violation with respect to punishment when he actually used the evidence

during the sentencing proceeding.

Petitioner suggests in briefing that he is also entitled to discovery and a

hearing to develop a guilt phase *Brady* claim.  The Court disagrees.  The extent to

which this evidence would have been favorable to Petitioner on questions of guilt

or innocence appears to be minimal.  Bainbridge's comments to Fazio did not

exclude Petitioner from participation in the robbery or the homicide; rather,

Bainbridge incriminated himself, at least as a participant in the sexual molestation

of the victim.  The statements also held no impeachment value because Bainbridge

did not testify at Petitioner's trial, and his pretrial interview with law enforcement

officials–in which he implicated Petitioner and portrayed himself as an innocent

bystander–was not before the jury.

Nor is the Court persuaded by Petitioner's argument that the evidence was

exculpatory and material because it would have supported the defense theory that

**Memorandum Decision and Order - 15**

Bainbridge alone killed the victim, perhaps with a sexual motivation.  Any benefit to Petitioner's defense in this regard would have been slight.  The jury found Petitioner guilty of felony murder, meaning that it found beyond a reasonable doubt that Petitioner was at least an intentional participant or accomplice in the robbery during which Dixie Wilson was killed.  The evidence at trial showed that *both* Petitioner and Bainbridge were likely involved in the crime, and additional evidence that Bainbridge may have told another inmate that he had touched the victim's breasts as she lay dying does not create a reasonable probability that the jury would have returned a different verdict with respect to Petitioner's guilt.

For all of these reasons, Petitioner's requests for discovery and evidentiary hearing on Claims 2, 3, and 4 will be denied.

(3)    Allegations of *Ex-parte* Contact and Judicial Bias: Claims 5 and 6

Judge Robert Newhouse presided over Petitioner's trial and the ensuing capital sentencing proceedings in 1981, 1983, 1988, and 1992.  In Claim 5, Petitioner contends that Judge Newhouse considered telephone calls and letters, apparently from the general public, that were not disclosed to Petitioner or his counsel before sentencing.  *See Gardner v. Florida*, 430 U.S. 349 (1977) (holding that a capital defendant has a constitutional right to explain or rebut information upon which the sentencer relies).  In Claim 6, Petitioner alleges that he was

**Memorandum Decision and Order - 16**

deprived of a fair sentencing proceeding in front of an impartial judge.  *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-22 (1986); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927).   Petitioner bases Claim 6, in part, upon the judge's response to Petitioner's inquiries into the alleged consideration of outside information.

These claims have their genesis in an interview that Judge Newhouse gave to a local newspaper reporter in early 1982, after he had sentenced Petitioner to death the first time but while the case was pending on appeal.  The reporter quoted the judge as saying that he "received a lot of telephone calls and letters before and after" he sentenced Petitioner.  *State's Lodging E-35, p. 38, Exhibit A*.  Judge Newhouse later denied Petitioner's request to question him under oath regarding the alleged calls and letters, though he stated that he had not been influenced by any outside communication.  *State's Lodging E-47*, pp. 44, 66.

On appeal, the Idaho Supreme Court declared that it was confident that Judge Newhouse did not rely upon any outside information, but because the case was going to be remanded for resentencing, it instructed the judge to "clear the air completely and state on the record what the factual content of those phone calls and letters were."  *Sivak II*, 731 P.2d at 200-01.  The judge responded by executing a document that he labeled "On the Record," in which he asserted that his court clerk had screened all letters and calls before the original sentencing hearing, and

**Memorandum Decision and Order - 17**

that he had neither personally read any letters nor received any calls from the

public before he sentenced Petitioner.  In that same document, he expressed his

extreme displeasure with counsel for raising the issue:

> It is sad that innuendos of a partisan and personal nature fabricated by over-zealous counsel should result in a judge being personally castigated in his own court.
>
> * * *
>
> Should this carnival atmosphere continue in these capital cases, and should a man's integrity be questioned without any reason whatsoever when doing his job, no judge will impose death sentences in Idaho, and I can't blame them! Such an action by judges will certainly thwart the will of the public as represented by the Idaho Legislature.

*State's Lodging H-66.*

Petitioner's counsel again requested that the judge disqualify himself from

the case, this time for bias.  Another state district court judge reviewed the record

and did not find a basis for disqualification, but concluded that only Judge

Newhouse could make the final decision whether he harbored a bias against

Petitioner or his counsel.  *State's Lodging I-70.*  Judge Newhouse denied

Petitioner's renewed request for disqualification, which was affirmed on appeal.

*Sivak IV*, 901 P.2d at 496.

Although the state court judge has consistently denied that his sentencing

decision was influenced by any outside communication or that he was biased,

**Memorandum Decision and Order - 18**

Petitioner contends that he has never been able to question the judge under oath and that some factual issues remain unresolved.  For example, Petitioner suggests that it is unclear how the judge was made aware that his chambers received "a lot" of letters and telephone calls, when those contacts occurred, and the extent to which the judge may have been aware of the substance of those contacts.  This Court is skeptical that any material facts regarding either of these claims remain to be developed, but in light of the heightened reliability that is required in capital cases, the Court will give Petitioner some leeway to engage in limited discovery.

Accordingly, the Court will grant Petitioner's request to depose Judge Newhouse and his court clerk.  The Court is reluctant to burden a state district judge and his former staff member with responding to discovery in a federal habeas case, particularly when so much time has elapsed and the judge has since retired from the bench, but the Court believes that any burden shall be minimized by the narrow scope of discovery.  Petitioner may explore only the alleged receipt and consideration of information that was not disclosed to Petitioner or his counsel for sentencing purposes and, to a limited extent, the judge's ability to remain fair and impartial by the final sentencing hearing in light of his comments in the

record.[4]

After discovery is complete, Petitioner may present any additional facts that he believes are relevant to these matters and would support his evidentiary hearing request.  The Court will then decide whether the record should be expanded or an evidentiary hearing will be necessary.

(4)     Additional Evidence Considered at Sentencing: Claims 9 and 12

In Claim 9, Petitioner alleges that the district court considered evidence at sentencing that was unlawfully obtained from a defense psychologist, despite the court's decision that the information would be excluded from the presentence investigation report.  In Claim 12, Petitioner contends that the sentencing court unconstitutionally considered additional unreliable evidence in support of non-statutory aggravating factors without giving Petitioner adequate notice.  These are matters that can be resolved on the record, and Petitioner has not persuaded the

---

[4] In 1996, the Court denied Petitioner's first request to depose Judge Newhouse, but did so, in part, because it appeared that Petitioner had not exhausted Claim 6.  (Docket No. 22, pp. 3-4.)  The Court has since determined that the claim has been exhausted and will be heard on the merits.  (Docket No. 170, p. 18.)  To the extent that the Court concluded that the document "On the Record" eliminated the need for a deposition on Claim 5, the Court has reconsidered that decision.  (Docket No. 22, p. 4.)

The Court also granted Petitioner's request in 1996 to depose Judge Newhouse's court clerk, but Petitioner apparently did not follow through with the deposition.  While the Court does not find that Petitioner has waived his right to proceed with this discovery, he will, of course, have to contend with the passage of time and its effect on the witnesses' abilities to recall and reconstruct events that occurred many years ago.

Court that additional factual development is required.

## CONCLUSION

The Court has reconsidered the procedural default status of Claim 14, which will be dismissed with prejudice.  Petitioner's Motions for Discovery and Motion for Evidentiary Hearing will be denied with the exception of the limited discovery that the Court has authorized on Claims 5 and 6.  At the conclusion of the limited discovery period, Petitioner may submit any additional facts in support of those claims, and the Court will then determine whether a hearing will be necessary as to those claims.  If the Court concludes that no hearing will be necessary, it will set a final briefing schedule on the merits of the remaining claims.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion to Reconsider Order on Motion to Alter or Amend (Docket No. 267) is GRANTED.  Claim 14 in the First Amended Petition is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Petitioner's Motion for Evidentiary Hearing (Docket No. 247) is DENIED.  The Motion with respect to Claims 5 and 6 is denied without prejudice.

IT IS FURTHER ORDERED that Petitioner's Motion for Discovery

(Docket No. 259) is GRANTED in part and DENIED in part, as set forth in the Memorandum Decision.

IT IS FURTHER ORDERED that the discovery allowed in this Order shall be completed within 90 days of the date of this Order.  Petitioner shall present any additional facts with respect to Claims 5 and 6 within 90 days of the date of this Order.

IT IS FURTHER ORDERED that the Clerk shall substitute John Hardison as the proper current Respondent in this matter in the place of Joe Klauser.

DATED:  **November 21, 2005**



B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 22**